# FOR PUBLICATION



**FILED & ENTERED**

**JUN 18 2014**

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Michael J. and Lisa D. Kessler, Debtors. | Case No.:   2:14-bk-10717-ER<br>Chapter:    11 |
| Mercedes Bohbot,<br><br>    Plaintiff,<br><br>v.<br><br>Michael J. Kessler, an Individual;<br><br>and DOES 1 through 10, Inclusive,<br><br>    Defendants. | Adv. No.:   2:14-ap-01115-ER<br><br>**REPORT AND RECOMMENDATION OF THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA CONTAINING PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT REGARDING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

    This Report and Recommendation is submitted by the undersigned Judge of the United States Bankruptcy Court for the Central District of California (the "Court") to the United States District Court for the Central District of California (the "District Court") pursuant to 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure ("FRBP") 9033, based upon the Court's determination that the matters addressed herein constitute a non-core proceeding.

    As detailed more fully below, the Court recommends (1) that the District Court adopt all of the Court's proposed findings of fact and conclusions of law; (2) that the District Court enter orders denying Mercedes Bohbot's Motion for Remand [Doc. No. 29] and granting Michael J. Kessler's Motion for Judgment on the Pleadings; (3) and that the District Court enter a final

judgment in favor of Michael J. Kessler, defendant in this proceeding, dismissing with prejudice the Complaint for Damages ("Complaint") [Doc. No. 1] and all claims asserted therein.

**I. Introduction**

At issue is the preclusive effect of a claims disallowance order in debtors' previous chapter 11 bankruptcy case. Instead of confirming a chapter 11 plan, debtors voluntarily dismissed the case after reaching settlement agreements with their most significant creditors. Had the debtors confirmed a plan, the claims disallowance order would clearly be entitled to preclusive effect.[1] Because the settlement agreements followed by the voluntary dismissal operated as the functional equivalent of a confirmed plan of reorganization, the claims disallowance order is entitled to preclusive effect.

**II. Procedural Background**

On March 15, 2011, Michael and Lisa Kessler ("Debtors") filed a voluntary chapter 11 petition, Case No. 2:11-bk-21026-ER (the "First Bankruptcy Case").[2] At the time of the petition, Debtors owned, had an interest in, or had an interest in entities that owned ten pieces of real property, including two office buildings, two industrial buildings, four houses, a condominium, and a vacant lot. Debtors entered into, and the Court approved, various settlement agreements resolving creditor's claims with respect to the properties.

On June 5, 2011, Mercedes Bohbot filed Proof of Claim 21, alleging that Debtors owed her approximately $1 million, stemming from loans Bohbot made to the Debtors to facilitate various real estate projects. Attachment to Proof of Claim 21. Debtors objected to Bohbot's Proof of Claim. On October 24, 2011, the Court entered an order disallowing the Bohbot claim (the "Claims Disallowance Order") [Doc. No. 127], reasoning that Bohbot had failed to substantiate that the money in question was a loan and not an investment. Bohbot appealed the Claims Disallowance Order to the District Court, which affirmed the order on October 18, 2012. *See* Civil Minutes—General [Doc. No. 18, Case No. 2:11-cv-09431-GAF]. Bohbot did not appeal the District Court's affirmance of the Claims Disallowance Order.

Prior to the District Court's affirmance of the Claims Disallowance Order, Debtors filed a motion to voluntarily dismiss their chapter 11 case (the "Dismissal Motion") [Doc. No. 186 ]. The Dismissal Motion was predicated upon the fact that Debtors had resolved most of the claims asserted against them through Court-approved settlement agreements, and could more efficiently resolve the few remaining issues outside of bankruptcy. On May 31, 2012, the Court granted the Dismissal Motion, with the proviso that "Bankruptcy Orders of the Court shall remain in full

---

[1] Section 1141(d)(1)(A) provides that unless the plan provides otherwise, the "confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation."

[2] All citations to pleadings are to the Court's Electronic Case Filing (ECF) docket, also known as PACER (Public Access to Court Electronic Records). This Report and Recommendation references the dockets in the First Bankruptcy Case (Case No. 2:11-bk-21026-ER), the Second Bankruptcy Case (Case No. 2:14-bk-10717-ER), and an adversary proceeding in the Second Bankruptcy Case (Case No. 2:14-ap-01115-ER).

force and effect despite dismissal of the Debtors' Chapter 11 bankruptcy case." Dismissal Order, Doc. No. 201.

On September 9, 2013, Debtors moved for reconsideration of the Dismissal Order. Debtors sought to reopen their bankruptcy case to respond to an action filed against Kessler in the Los Angeles Superior Court, *Bohbot v. Kessler* (Case No. SC120986) (the "Complaint"). Debtors asserted that through the Complaint, Bohbot was improperly attempting to relitigate issues that had already been determined by the Claims Disallowance Order. The Court declined to reopen the First Bankruptcy Case, concluding that Debtors had not demonstrated the extraordinary circumstances necessary to justify relief under Fed. R. Civ. P. 60(b)(6). *See* Doc. No. 209.

On January 14, 2014, Debtors filed a second chapter 11 petition, Case No. 2:14-bk-10717-ER (the "Second Bankruptcy Case"). On February 25, 2014, Debtors removed the Complaint to the bankruptcy court. Presently before the Court are Kessler's Motion for Judgment on the Pleadings [Doc. No. 8] and Bohbot's Motion for Remand [Doc. No. 29].[3]

**III. Motion for Remand**

Bohbot seeks to remand the proceedings to the state court pursuant to 28 U.S.C. § 1447(c) on the grounds that the Court lacks subject matter jurisdiction. Bohbot further contends that remand is warranted pursuant to 28 U.S.C. § 1452 on equitable grounds. Finally, Bohbot asserts that mandatory abstention applies under 28 U.S.C. § 1334(c)(2).

A. 28 U.S.C. § 1147(c)

Remand is not warranted under 28 U.S.C. § 1447(c) because the Court has subject matter jurisdiction. Although Bohbot's action raises only state law claims, the Court has "related to" jurisdiction under 28 U.S.C. § 1334(b).[4] "Related to" jurisdiction exists if "the outcome of the

---

[3] Bohbot also filed a Motion for Relief from the Automatic Stay so that she could litigate the Complaint in state court in the event the Court remanded the action. Bohbot filed a motion for damages for violation of the automatic stay, in which she alleged that Debtors violated the automatic stay by removing the Complaint without first obtaining stay relief. The motions for relief from the automatic stay and for damages for violation of the automatic stay are core proceedings over which the Court may enter final orders. *See* 28 U.S.C. § 157(b)(2)(G) (listing "motions to terminate, annul, or modify the automatic stay" as a core proceeding); *Fortune v. Zumbrun (In re Zumbrun)*, 88 B.R. 250, 253 (9th Cir. BAP 1988) (holding that a motion to impose sanctions for violation of the automatic stay was a core proceeding over which the bankruptcy court had subject matter jurisdiction).

[4] Debtor contends that the Complaint is a core proceeding based on the fact that Bohbot filed a Proof of Claim based solely on the claims for relief asserted in the Complaint. Opposition to Remand Motion at 7, Doc. No. 12. However, in *In re Conejo Enterprises, Inc.*, 96 F.3d 346 (9th Cir. 1996), the Ninth Circuit concluded that the filing of a Proof of Claim did not transform an adversary proceeding based upon the same transaction into a core proceeding. *Id.* at 349. Although the Proof of Claim was indisputably a core proceeding, the adversary action was not. Applying *Conejo*, the Court finds that the Complaint, which is based entirely on state law, is not a core proceeding.

proceeding could conceivably have any effect on the estate being administered in bankruptcy…. An action is related to bankruptcy if the action could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt t estate." *Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988). Here, adjudication of the Complaint will determine whether Bohbot holds a substantial claim against the estate. Bohbot's Proof of Claim alleges a debt of $3 million and Bohbot is by far the Debtors' largest alleged creditor.

B. 28 U.S.C. § 1452

Title 28 U.S.C. § 1452 provides that the Court may remand the Complaint "on any equitable ground." Bohbot contends that the following factors, as set forth in *In re Enron*, 296 B.R. 505, 508 n.2 (Bankr. C.D. Cal. 2003) weigh in favor of remand:
> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends remand;
> (2) extent to which state law issues predominate over bankruptcy issues; …
> (4) presence of related proceedings commenced in state court or other nonbankruptcy proceedings;
> (5) jurisdictional basis, if any, other than § 1334; …
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial.

Contrary to Bohbot's contentions, the *Enron* factors do not weigh in favor of remand. First, remand would make administration of the case less efficient. If the case were remanded, the state court would be required to apply federal law to determine whether the Complaint's claims for relief are precluded by the Claims Disallowance Order. This Court is in a better position to assess the preclusive effect of the Claims Disallowance Order within the specialized context of a bankruptcy proceeding. In addition, the allowability of Bohbot's $3 million claim is a significant issue in the Second Bankruptcy Case. Allowability of the claim will be affected by the outcome of the instant litigation. Remanding the proceedings to state court could result in further delay.

Second, state law issues do not predominate over bankruptcy issues. Although the Complaint sets forth exclusively state-law claims for relief, as set forth below, the Court finds that adjudication of the Complaint is precluded by the Claims Disallowance Order. The preclusive effect of the Claims Disallowance Order is a bankruptcy issue—the Claims Disallowance Order was entered by the bankruptcy court, and the court must determine its preclusive effect within the bankruptcy context. While the state court is certainly capable of making such determinations, the bankruptcy court is better situated to do so.

Third, in commencing the Second Bankruptcy Case and removing the Complaint, Debtors were not forum shopping. Removal of the Complaint to the bankruptcy court was a legitimate means for Kessler to propound his issue preclusion argument.

Fourth, there are no proceedings related to the Complaint pending in other nonbankruptcy forums. Bohbot argues that the Complaint itself qualifies as a related nonbankruptcy proceeding. For this argument to make sense, the Complaint would have to be related to itself. Such reasoning does violence to the plain meaning of the phrase "related proceeding."

Fifth, although litigation of the Complaint in the state court would in theory afford Bohbot a right to a jury trial, this factor does not weigh in favor of remand in view of the Court's

determination, discussed below, that the Complaint is precluded by the Claims Disallowance Order.

Sixth, while the fact that the Court has jurisdiction over the Complaint only pursuant to 28 U.S.C. § 1334 weighs in favor of remand, one factor alone is not enough to tip the balance.

C. 28 U.S.C. § 1334(c)(2)

Mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply as there is no parallel state court proceeding. "Abstention can exist only when there is a parallel proceeding in state court. That is, inherent in the concept of abstention is the presence of a pendent state action in favor of which the federal court must, or may, abstain." *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997).

**IV. Motion for Judgment on the Pleadings**[5]

Defendant Kessler seeks to dismiss all claims for relief in the Complaint.[6] Kessler asserts that the claims are barred by res judicata, collateral estoppel, expiration of the statute of limitations, and judicial estoppel. The Court finds that the claims are barred by res judicata and collateral estoppel, but not by expiration of the statute of limitations[7] or by judicial estoppel.[8]

---

[5]  Debtor objects to the declaration of Paul Philips [Doc. No. 12] submitted in opposition to the motion and seeks to have it stricken from the record. The declaration consists largely of a narrative description of the procedural history of the First Bankruptcy Case, the Debtor's objection to Bohbot's claim, and the Second Bankruptcy Case. The Court is familiar with the proceedings in these cases and takes judicial notice of the docket. The Court will not strike the declaration from the record. However, those portions of the declaration that are either inconsistent with the docket or contain argument or legal opinions disguised as testimony are accorded minimal evidentiary weight.

[6]  In reaching these proposed findings of fact and conclusions of law, the Court takes judicial notice, pursuant to Federal Rule of Evidence 201, of all documents on file in this adversary proceeding, the Second Bankruptcy Petition, the First Bankruptcy Petition, and all documents filed in connection with the appeal of the Claims Disallowance Order to the Bankruptcy Appellate Panel. The Court may take such judicial notice without converting the motion into a motion for summary judgment because the documents in question are matters of public record that are not subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). In *Lee*, the court held that judicial notice of certain items was inappropriate because the court took notice of certain disputed facts contained within the matters of public record. Here, the Court's reasoning with respect to the items judicially noticed does not rely upon facts subject to reasonable dispute. For example, Bohbot may reasonably dispute the character of the transactions giving rise to her Proof of Claim in the First Bankruptcy Case, but cannot reasonably dispute that the District Court issued a minute order explaining its affirmance of the Claims Disallowance Order.

[7]  Assuming that all material facts alleged in the Complaint are true—as the Court must in the context of Kessler's Motion for Judgment on the Pleadings—the Court finds that the claims for relief are timely under the relevant state-law statutes of limitation.

The Complaint asserts claims for relief against Kessler based upon negligent misrepresentation, fraud, breach of fiduciary duty, breach of contract, negligence, financial elder abuse, conversion, constructive trust, accounting, and declaratory relief. According to the Complaint, Kessler abused Bohbot's trust and friendship by inducing her to provide funds for an office building Kessler was developing in Rancho Mirage, California (the "Rancho Mirage Project"). The Complaint alleges, *inter alia*, that Kessler misrepresented material facts regarding the Rancho Mirage Project; affirmatively misled Bohbot regarding the Rancho Mirage Project; and breached his fiduciary duties to Bohbot.

"Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).

A. Identity of Claims

An "identity of claims" exists "when two suits arise from 'the same transactional nucleus of facts. Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Id.* at 1078.

Bohbot's claims for relief arise from the same transactional nucleus of facts as Bohbot's Claim 21, which the Court disallowed. Both Claim 21 and the Complaint are premised upon transfers of money between Bohbot and Kessler. To detail just a few of the similarities:

1) At paragraph 5, the Complaint alleges a $325,000 transfer by Bohbot to Kessler in May 2005. The first ledger entry, page 1, part 2 of the attachment to the Proof of Claim alleges the same transfer.
2) At paragraph 6, the Complaint alleges a $325,000 purported loan repayment by Bohbot to Kessler. Check number 1004 attached as page 3 to the Proof of Claim concerns the same transaction.
3) At paragraph 6, the Complaint alleges a $58,263.87 purported payment by Bohbot to Kessler in or about November 2006. Check number 1008, attached as pages 5-6 to the Proof of Claim, concerns the same transaction.
4) At paragraph 9, the Complaint alleges a $250,000 purported loan by Kessler to Bohbot by way of multiple checks. Ledger entries on pages 18-19 of the second attachment to the Proof of Claim concern the same transaction.

B. Final Judgment on the Merits

The Claims Disallowance Order was a final judgment on the merits.[9] "[A]llowance or disallowance of 'a claim in bankruptcy is binding and conclusive on all parties or their privies,

---

[8] Judicial estoppel does not apply because the Proof of Claim Bohbot filed in the First Bankruptcy Case was disallowed. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (holding that judicial estoppel applies only where the party prevails in one phase of a case).

[9] Bohbot relies extensively on one sentence in the Court's order denying Debtors' motion to reopen the First Bankruptcy Case: "the Court notes that Debtors did not request an evidentiary hearing with respect to their claim objection and this Court did not make any findings of fact or conclusions of law with respect to that claim." *See* Order Denying Motion for Reconsideration of

and being in the nature of a final judgment, furnishes a basis for a plea of res judicata.'" *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 529 (9th Cir. 1998).

At least one court has held that a claims disallowance order lacks preclusive effect where the debtors' case was dismissed and no discharge was entered. *See In re Mirzai*, 271 B.R. 647, 654 (Bankr. C.D. Cal. 2001). The *Mirzai* court reasoned that a "discharge creates finality, which frees the debtor of its past obligations. The disallowance of a claim is interlocutory in nature and intended only as a tool for the administration of the bankruptcy estate. Once the estate no longer needs administration, there is no reason to give effect to the disallowance." *Id.*

The *Mirzai* court's reasoning neglects to account for situations, such as the First Bankruptcy Case, in which debtors legitimately employ chapter 11's provisions to resolve creditor issues but do not confirm a plan of reorganization. Chapter 11 contains various mechanisms which permit debtors to resolve creditor issues outside the context of a plan. Court-approved settlement agreements are one such mechanism. Reflecting this principle, the court in *In re Best Products Co., Inc.* concluded that when determining whether a plan satisfied § 1129(a)(7)'s best interest of creditors test, "claims and the values paid to satisfy them [pursuant to court-approved settlement agreements] may be deleted from the model and the best interest of creditors test may be applied to the balance of the claims and values available." 168 B.R. 35 (Bankr. S.D.N.Y. 1994) (citing M. Bienenstock, *Bankruptcy Reorganization* 617 (1987)) (internal citations omitted). Other non-plan means of resolving creditor disputes include sales under § 363 and abandonment of estate assets under § 554.[10]

Non-plan methods of resolving debtor-creditor disputes can achieve the functional equivalent of a confirmed plan of reorganization. A claims disallowance order is entitled to preclusive effect when entered in a case invoking such non-plan methods to achieve the functional equivalent of a confirmed plan. Mandating plan confirmation as the price for an order's preclusive effect would increase administrative expenses, decreasing the value available for distribution to creditors.

Determining whether debtors have achieved the functional equivalent of a confirmed plan of reorganization in a dismissed case is fact intensive. Of primary concern is the proportion of creditor claims resolved during the case. *See Best Prods.*, 168 B.R. at 72 (claims resolved through settlement agreements are not considered for plan confirmation purposes).

---

Dismissal Order and to Reopen Chapter 11 Case, Doc. No. 209, Case No. 2:11-bk-21026-ER. This statement does not provide a complete picture of the Court's rulings in connection with the Claims Disallowance Order. Although the Court denied Bohbot's request for additional time to take discovery with respect to her claim, the Court did make findings of facts and conclusions of law with respect to the claim—specifically, that Bohbot had not carried her evidentiary burden of demonstrating that the funds disbursed were a loan rather than an investment. The Claims Disallowance Order [Doc. No. 127], the Court's tentative ruling [appears on the docket between entries 125 and 126], the Court's statements on the record at the hearing [Doc. No. 131], and the District Court's review of the proceedings in its minute order affirming the Claims Disallowance Order provide the most accurate picture of the Court's actions.

[10]   Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

In the First Bankruptcy Case, Debtors scheduled secured claims of $10,387,244.25 and unsecured claims of $7,956,283.82. *See* Summary of Schedules, Doc. No. 34.[11] According to Proofs of Claim filed by creditors,[12] secured claims amounted to $13,625,616.72 and unsecured claims amounted to $10,516,798.20. As described below, through Court-approved settlement agreements, a motion to abandon, and the Claims Disallowance Order, Debtors resolved $13,235,656.55 (or 97.13%) of the secured claims against them and $10,247,745.43 (or 97.44%) of the unsecured claims against them. Debtors achieved the functional equivalent of a confirmed plan using non-plan mechanisms of the Bankruptcy Code.

At the time of the filing of the petition in the First Bankruptcy Case, Debtors owned, had an interest in, or had an interest in entities that owned ten pieces of real property, including two office buildings, two industrial buildings, four houses, a condominium, and a vacant lot. Debtors entered into, and the Court approved, various compromises with creditors:

1. On June 22, 2011, the Court approved a settlement agreement between Debtors and Wells Fargo with respect to an office building located at 71687 Highway 111, Rancho Mirage, CA 92270 ("Rancho Mirage Office Building"). *See* Doc. No. 73 (order approving settlement agreement). The stipulation provided that in exchange for relief from the automatic stay as to the Rancho Mirage Office Building, Wells Fargo would waive its unsecured deficiency claims against the Debtors. *See* Doc. No. 69 at ¶ 3 (stipulation embodying terms of the settlement agreement). The stipulation resolved Wells Fargo's filed claim of $3,870,081.47.

2. On August 10, 2011, the Court approved the Debtors' motion to abandon four parcels of real property to secured creditors. The order approving the abandonment motion provided that the abandonment of each property "shall be deemed to have satisfied the claims of any secured creditor with a lien on the relevant" property. *See* Doc. No. 87 ("Abandonment Order"). The Abandonment Order disallowed the following secured and unsecured claims: (1) Wells Fargo's secured claim of $395,000 and unsecured claim of $74,870 in connection with property located at 76906 Tomahawk Road, Indian Wells, CA 92210; (2) Wells Fargo's secured claim of $1,862,571.17 in connection with property located at 53496 Via Palacio, La Quinta, CA 92253; (3) Cache Valley Bank's secured claim of $132,811 and unsecured claim of $283,693 in connection with property located at 80840 Via Porto Fino, La Quinta, CA 92253; and (4) JPMorgan Chase's secured claim of $1,800,000 and unsecured claim of $365,000 in connection with property located at 53364 Via Palacio, La Quinta, CA 92253.[13]

3. On September 27, 2011, the Court approved a settlement agreement between Debtors, Leo J. Kenney, and the Leo J. Kennedy 2009 Family Trust. The settlement agreement

---

[11] Debtor filed Amended Schedules A and B, Doc. No. 109, but the amendments did not alter the amount of the claims.

[12] Where the Proof of Claim differed from the amount scheduled by the Debtor, this calculation relies upon the amount stated in the Proof of Claim. The total includes claims scheduled by the debtor with respect to which creditors did not file a Proof of Claim.

[13] The claim amounts listed here are based upon Debtor's valuation of the properties.

    resolved various disputes between the Debtors and Kennedy with respect to consummation of a business transaction. *See* Doc. No. 114.
4. On January 6, 2012, the Court approved a settlement agreement between Debtors and Wells Fargo, resolving the following claims of Wells Fargo: (1) Secured claim of $988,849.60 arising from a line of credit secured by the Debtor's primary residence (Proof of Claim No. 15); (2) Unsecured claim of $386,000 and secured claim of $1,626,242 in connection with a loan and ISDA Master Agreement relating to commercial property located at 43875 Washington St., Palm Desert, CA 92211 (Proofs of Claim Nos. 16-17); (3) Secured claim of $315,000 and unsecured claim of $115,934.94 pertaining to real property located at 73-700 Dinah Shore Drive Unit 204, Palm Desert, CA 92211 (Proof of Claim No. 18); (4) Unsecured claim of $214,475 stemming from a line of credit (Proof of Claim No. 19). *See* Doc. No. 98 (motion to approve settlement agreement), Doc. No. 99 (memorandum of law supporting approval of settlement agreement), and Doc. No. 170 (order approving settlement agreement).
5. On May 16, 2012, the Court approved a settlement agreement between Debtors and Bank of the West. *See* Doc. No. 199. The settlement agreement resolved claims held by Bank of the West aggregating $8,210,869.81 (Proofs of Claim No. 22).

    Debtors resolved the dispute with alleged creditor Bohbot by filing a motion to disallow Bohbot's Proof of Claim. *See* Doc. No. 107 ("Disallowance Motion"). On October 24, 2011, the Court entered the Claims Disallowance Order, Doc. No. 127. In ruling upon the Disallowance Motion, the Court explained that the "essential dispute is over the existence and characterization of the various exchanges of money [between Debtors and Bohbot] between May 2005 and February 2005." *See* Tentative Ruling [appears on the docket between entries 125 and 126]. The Court noted that the "matter is made more difficult by the parties' failure to enter into any [written] agreements regarding the nature of the agreements.... The parties only produce two letters, one email, and copies of checks exchanged between the parties. The only other evidence [consists of] contradictory declarations." *Id.* The Court concluded that on the minimal record before it, Bohbot had failed "to establish that the transaction constituted a loan, rather than an investment, entitling [Bohbot] to a claim against Debtors' bankruptcy estate." *Id.*

    Bobhot appealed the Claims Disallowance Order to the District Court. On October 18, 2012, the District Court issued a minute order affirming the Claims Disallowance Order. *See* Civil Minutes—General [Doc. No. 18, Case No. 2:11-cv-09431-GAF].

    In affirming the Claims Disallowance Order, the District Court rejected Bohbot's argument that she should have been permitted to propound discovery prior to the Bankruptcy Court's disposition of the Claims Disallowance Motion:

> [A] bankruptcy court abuses its discretion in denying discovery only if 'the movant diligently pursued its previous discovery opportunities, and can demonstrate that allowing additional discovery would have precluded summary judgment.'" *In re Thorpe Insulation Co.*, 671 F.3d at 1024 (9th Cir. 2012) (quoting *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008). Here, there is no indication Bohbot engaged in any pursuit of discovery prior to the hearing on her Claim. Rather, Bohbot argues circularly that she did not pursue discovery because she "had every right to believe in the presumptive validity of her Claim . . . and

> had no reason to treat her Claim as a contested matter warranting or requiring discovery." (Docket No. 17, [Appellant's Reply Brief ("Reply")] at 7.) Bohbot filed her Claim on July 5, 2011, and the hearing was held over four months later. There is no indication of any effort whatsoever to gather evidence in this interim period, even after the Kesslers filed their motion to disallow on September 15, 2011. There was also no indication in the hearing of what relevant information Bohbot hoped to discover if given the opportunity. (Transcript at 351.) At most, Bohbot argued that she "ha[sn't] been given information about the disposition of their funds." (Id. at 357.) Be that as it may, the Bankruptcy Court aptly noted that Bohbot by no means "ma[de] clear to the Court that this was a loan as opposed to an investment." (Id. at 358.) Bohbot's argument as to why she needs discovery gives no indication of what evidence she would seek, beyond what she already has in her possession, that would shed any more light on the parties' understanding regarding the nature of their financial relationship....
>
> The Bankruptcy Court noted that "the facts of this will always be murky. And the understanding of the parties will always be unclear." (Transcript at 358.) This is an astute observation given the dearth of documentary evidence between the two parties that could indicate the parties' mutual understanding. There was no diligent pursuit of discovery by Bohbot prior to the hearing and there was no indication that additional discovery could clarify the character of the money changing hands. Accordingly, the Bankruptcy Court did not abuse its discretion in disallowing Bohbot's Claim without discovery. *Id.*

The District Court rejected Bohbot's contention that her claim should not have been disallowed because the Debtors had not sufficiently rebutted the presumption of the claim's validity:

> The Kessler's having successfully rebutted the presumption of validity, the burden shifted to Bohbot. Instead of substantiating her Claim, Bohbot's opposition to the motion to disallow actually put forth a letter that undercut her own position.... Having failed to present any evidence to establish that her disbursement of funds to the Kesslers was a loan and not an investment, the bankruptcy judge correctly concluded that Bohbot had not met her burden of proving her claim. *Id.*

  As the District Court found, Bohbot had ample opportunity to present the issues arising in her Proof of Claim to the Court, although she did not take advantage of that opportunity. The fact that Bohbot had a full and fair opportunity to litigate the Proof of Claim issues provides additional support for conclusion that the Claims Disallowance Order was a final judgment on the merits. In addition, the Dismissal Order in the First Bankruptcy Case—which Bohbot did not appeal and which is now final—provides that the Claims Disallowance Order remains in force notwithstanding dismissal. Dismissal Order, Doc. No. 201.

C.  <u>Privity of the Parties</u>

Bohbot and Debtor were parties to the Claim Objection Motion giving rise to the Claims Disallowance Order; both are parties to the Complaint. Privity exists for res judicata purposes.

**V. Conclusion**

In the First Bankruptcy Case, Debtors successfully restructured their financial affairs and sought dismissal only after resolving, through settlement agreements and other means, disputes with creditors holding more than 97% of the claims against them. Debtors' restructuring was the functional equivalent of a confirmed plan. As a result, the Claims Disallowance Order is entitled to preclusive effect, requiring dismissal of the Complaint.

For these reasons, the Court recommends (1) that the District Court enter orders adopting the Court's findings of fact and conclusions of law, denying the Motion for Remand, and granting the Motion for Judgment on the Pleadings, and (2) that the District Court enter final judgment in favor of Kessler, dismissing with prejudice the Complaint and all claims asserted therein.

Date: June 18, 2014

Ernest M. Robles
United States Bankruptcy Judge